THOMAS R. BURKE (CA State Bar No. 141930)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599

KATHERINE M. BOLGER (*pro hac vice*)
katebolger@dwt.com
JOHN M. BROWNING (*pro hac vice*)
johnbrowning@dwt.com
KATHLEEN E. FARLEY (*pro hac vice*)
kathleenfarley@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:  (212) 489-8230
Facsimile:    (212) 489-8340

Attorneys for Non-Party Journalist
Ryan Mac

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| VERNON UNSWORTH,<br><br>                Plaintiff,<br><br>    vs.<br><br>ELON MUSK,<br><br>                Defendant. | ) Case No. 3:19-mc-80224-JSC<br>)<br>) (C.D. Cal. No. 18-cv-08048-SVW-JC)<br>)<br>) **REPLY BRIEF IN FURTHER SUPPORT**<br>) **OF MOTION TO QUASH SUBPOENA**<br>) **ISSUED FROM A CIVIL CASE PENDING**<br>) **BEFORE THE UNITED STATES**<br>) **DISTRICT COURT FOR THE CENTRAL**<br>) **DISTRICT OF CALIFORNIA AND**<br>) **SERVED ON NON-PARTY JOURNALIST**<br>) **RYAN MAC**<br>)<br>) Hearing Date:  October 17, 2019<br>) Hearing Time:  9:00 a.m.<br>) Courtroom:      Courtroom F – 15th Floor.<br>) Judge:            Hon. Jacqueline S. Corley<br>) |

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.      THE MUSK DEPOSITION SUBPOENA MUST BE QUASHED ...................................... 2

      A.     The Musk Deposition Subpoena Calls for Information That Is Not Relevant ........... 2

      B.     The California Shield Law Requires That the Subpoenas Be Quashed..................... 5

            1.     The Shield Law Plainly Covers the Testimony Sought from Mac ........................................................................................................... 5

            2.     Mac Never Waived the Protections of the California Shield Law ............................................................................................................... 9

            3.     This Court Should Not Delay Its Decision Quashing the Subpoenas ................................................................................................ 11

      C.     Musk Has Failed To Overcome Mac's Showing That the Subpoenas Impose an Undue Burden ........................................................................................ 12

II.     THIS COURT SHOULD QUASH UNSWORTH'S DEPOSITION SUBPOENA ............. 13

CONCLUSION.............................................................................................................. 15

**Cases**

*Baez v. JetBlue Airways*,
    2012 U.S. Dist. LEXIS 161246 (E.D.N.Y. Nov. 9, 2012)...........................................................11

*Baker v. Goldman Sachs & Co.*,
    669 F.3d 105 (2d Cir. 2012)...........................................................................................6, 14

*Delaney v. Super Ct.*,
    50 Cal. 3d 785 (1990) ............................................................................................................5

*Fost v. Super. Ct.*,
    80 Cal. App. 4th 724 (2000) ............................................................................................9, 15

*Gonzales v. Google, Inc.*,
    234 F.R.D. 674 (C.D. Cal. 2006) ..........................................................................................2

*Hurry v. Fin. Indus. Regulatory Auth.*,
    2017 U.S. Dist. LEXIS 108005 (N.D. Cal. Apr. 7, 2017) ...............................................7, 8

*Hurry v. Fin. Indus. Regulatory Auth., Inc.*,
    2017 U.S. Dist. LEXIS 108003 (N.D. Cal. May 2, 2017) ......................................................8

*Lemberg Law LLC v. Hussin*,
    2016 U.S. Dist. LEXIS 76772 (N.D. Cal. June 13, 2016) ...................................................14

*Miller v. Super. Ct.*,
    21 Cal. 4th 883 (1999) ...........................................................................................................8

*N.Y. Times Co. v. Super. Ct.*,
    51 Cal. 3d 453 (1990) .......................................................................................................9, 11

*People v. Vasco*,
    131 Cal. App. 4th 137 (2005) ................................................................................................5

*Playboy Enters., Inc. v. Super. Ct.*,
    154 Cal. App. 3d 14 (1984)...........................................................................................6, 9, 10

*Schneider v. United Airlines, Inc.*,
    208 Cal. App. 3d 71 (1986)....................................................................................................3

*Shaklee Corp. v. Gunnell*,
    110 F.R.D. 190 (N.D. Cal. 1986)..........................................................................................9

*Soto v. Castlerock Farming & Transp., Inc.*,
    282 F.R.D. 492 (E.D. Cal. 2012) ........................................................................................14

*Ward v. News Grp. Newspapers*,
    1990 U.S. Dist. LEXIS 16113 (C.D. Cal. Aug. 27, 1990)...............................................11, 12

**Statutes**

Cal. Evid. Code § 1070 (the "Shield Law")........................................................................5

**Rules**

Fed. R. Civ. P. 30(b)(6)..............................................................................4, 5, 7, 13

Fed. R. Civ. P. 45 .................................................................................2, 11, 12, 13, 15

**Constitutional Provisions**

Cal. Const. Article I, § 2(b) (the "Shield Law") ...................................1, 2, 5, 6, 7, 8, 9, 10, 11, 13, 15

U.S. Const. amend I ...............................................................................9, 11, 15

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH
Case No. 3:19-mc-80224-JSC

# PRELIMINARY STATEMENT

In their oppositions to Ryan Mac's motion to quash, Elon Musk and Vernon Unsworth took two entirely different paths – Unsworth sought to limit the scope of any requested testimony, while Musk chose to dramatically expand it. Their arguments merely strengthen Mac's motion to quash.[1]

Musk's tactic is to propose a slew of new deposition topics in the hope that some of them fall outside the reach of the California Shield Law because Musk knows that the information he is really after – *i.e.*, information about Mac's decision to publish the September 4 Article – is absolutely protected. This scattershot approach betrays the weakness of Musk's argument, which is that he will do anything to secure Mac's deposition regardless of whether any of the information he seeks is actually relevant to the Defamation Action. In reality, none of the information Musk seeks is relevant. The underlying lawsuit hinges on whether Elon Musk published a defamatory factual statement about Vernon Unsworth with subjective awareness of its probable falsity. The testimony Musk seeks from Mac – including "prior instances in which Mr. Mac published information and identified an off-the-record source," "BuzzFeed News' reason for modifying its standards" and "the process for reporting and publishing articles" (Musk Br. 13) – has no bearing on the legal issues in dispute, not even to the limited issue of whether Musk should have reasonably foreseen that BuzzFeed would republish his Emails. Rather, the fact that Musk has allowed his Deposition Subpoena to become so unmoored and wide-ranging confirms that his true purpose is to harass a reporter – whom Musk has already called a "fucking asshole" – and punish a news publication for its critical reporting.

In contrast to Musk's expansive approach, Unsworth proposes to depose Mac on "a limited series of foundational facts related to previously disclosed circumstances surrounding Musk's publication [of Emails] to him" (Unsworth Br. 4) – but even this would impose an undue burden. The fact that narrowly-cabined information Unsworth seeks is equally available from Musk –

---

[1] Unless otherwise specified, capitalized and abbreviated terms will have the same definition that they had in Mac's moving memorandum of law ("Mac Br.") and supporting declarations or in the briefs and supporting declarations filed by Unsworth ("Unsworth Br.") or Musk ("Musk Br."). This reply responds to both opposition briefs, filed at Dkt. 17 and Dkt. 19, respectively.

because Musk can testify about his communications with Mac – undermines any argument that a deposition is necessary. More fundamentally, Unsworth's Deposition Subpoena would open the back-door to Musk to subject Mac to cross-examination that would violate Mac's rights under the California Shield Law and must be quashed for that reason, even assuming *arguendo* that Unsworth could limit his direct examination to non-privileged information. For all these reasons, set forth in greater detail below, this Court should quash both Deposition Subpoenas.

## ARGUMENT

### I.    THE MUSK DEPOSITION SUBPOENA MUST BE QUASHED

#### A.    The Musk Deposition Subpoena Calls for Information That Is Not Relevant

In his opposition brief, Musk announces for the first time his intention to use his Deposition Subpoena as an unrestricted fishing expedition "to obtain information on BuzzFeed's and Mr. Mac's journalistic practices." Musk Br. 19. This significant expansion weakens Musk's arguments, because it merely emphasizes how irrelevant the information sought by Musk really is to this litigation. Indeed, this Court need not even reach the privilege issue and could quash pursuant to Rule 45 alone because "any burden whatsoever [is] by definition undue" when the information sought is "not relevant." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (C.D. Cal. 2006) (citation omitted).

Before Mac filed this Motion, Musk's attorney represented that "he wanted to take Mac's deposition to find out why BuzzFeed had decided to publish Musk's Emails in the September 4 Article." Bolger Decl. ¶ 23.[2] But, as described in the Opposition, the scope of the Deposition Subpoena has exploded and now includes:

> Mr. Mac's process for developing sources on his beat, Mr. Mac's general
> understanding of the BuzzFeed policies on sourcing and pre-publication review,
> BuzzFeed's reasoning for modifying their News Standards to specify that a
> reporter must agree to go off-the-record, … prior instances in which Mr. Mac

---

[2] The attorney who stated that Mac's deposition would be limited to "internal deliberations" about the September 4 Article has not filed a declaration in this action disputing the accuracy of any of the facts set forth by BuzzFeed on this subject.

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH
Case No. 3:19-mc-80224-JSC

published information and identified an off-the-record source, and the general

process for reporting and publishing articles ….

Musk Br. 18. By seeking to depose Mac on such a wide-ranging list of topics – including the catch-all subject of Mac's "process for reporting and publishing articles" – Musk essentially seeks free reign to question Mac about any and all aspects of his work as a journalist, including his newsgathering process on other stories wholly unrelated to the rescue of the Thai soccer team or Musk's attacks on Unsworth.

But *none* of these subjects have anything to do with the question at issue in the underlying lawsuit, *i.e.*, whether Musk uttered a false, defamatory statement about Unsworth with subjective awareness of probable falsity and caused him damage. *See* Reply Declaration of Kate M. Bolger dated October 4, 2019 ("Bolger Reply Decl.") Ex. A. In fact, they are not even relevant to "the question of whether BuzzFeed's republication of Musk's emails were foreseeable" to Musk, which is the only legal issue to which Musk has claimed Mac's testimony bears any relevance. Musk Br. 13.[3] As discussed in Mac's opening memorandum, the only evidence relevant to what Musk believed was reasonably foreseeable is what *Musk* himself thought. *See* Mac Br. 19-20; *Schneider v. United Airlines, Inc.*, 208 Cal. App. 3d 71, 75 (1986) (holding republication was reasonably foreseeable because the original publisher should have known the information would be republished). Mac's "process for developing sources on his beat" and his "general understanding of the BuzzFeed policies on sourcing and pre-publication review" simply do not bear on the question of what Musk actually thought or should have known. Musk's own motion for summary judgment in the Defamation Action confirms as much. In that motion, Musk devotes a full page of legal argument and 17 paragraphs of sworn affidavit testimony to support his contention that "[i]t was not reasonably foreseeable that BuzzFeed would unilaterally publish communications that were labeled off-the-record instead of independently verifying the information before Mac." Bolger

---

[3] Musk asserts in passing that "the relevant topics are not limited to reasonable foreseeability, but also include safeguards that BuzzFeed News employs to ensure that they do not publish defamatory articles." Musk Br. 19. But BuzzFeed's "safeguards" are not at issue in this Defamation Action where Musk admitted to making the alleged defamatory statement and BuzzFeed is not a defendant.

Reply Decl. Exs. A, 20-21, B, ¶¶ 40-57.[4]  But Musk's legal analysis (correctly) focuses exclusively on "what Mr. Musk reasonably expected BuzzFeed to do" and makes no mention whatsoever of Mac or the process by which BuzzFeed decided to publish the September 4 Article.  Indeed, the only evidence that Musk relies on in making his reasonable foreseeability argument is his own interpretation of "BuzzFeed's … published policies" and his experience of "countless off-the record interactions with reporters in the past."  *Id.* at 20-21.[5]  In other words, Musk's own summary judgment motion argues that a court can rule that he is not liable for defamation, as a matter of law, by focusing exclusively on Musk's state of mind at the time he sent the Emails.  Mac agrees with Musk on this point: the testimony Musk seeks from Mac is utterly irrelevant.

This Court should also not be persuaded by Musk's claim that he sought to narrow the scope of inquiry to relevant information by offering "to convert the Mac deposition to a Rule 30(b)(6) deposition of BuzzFeed News" (Musk Br. 1).  The laundry list of subjects proposed by Musk belie this claim.  He sought testimony about:

> (1) BuzzFeed's guidelines on publishing off-the-record and on-background information; (2) BuzzFeed's prior publication of off-the-record and on-background information; (3) BuzzFeed's pre-publication review process; (4) BuzzFeed's editorial process, including determination of newsworthiness, conflict of interest, and publication of original source documents; (5) BuzzFeed's guidelines on social media usage by reporters; (6) the scope and existence of BuzzFeed's coverage of Elon Musk, Tesla, or SpaceX; (7) the scope and existence of BuzzFeed's coverage of the Thai cave rescue; (8) BuzzFeed's procedures for predicting article popularity; (9) BuzzFeed's policies for

---

[4] As an aside, Musk's claims can also be tested simply by reading the relevant Emails, published in the September 4 Article and produced by Musk in this litigation.

[5] Musk includes a footnote stating in conclusory fashion that "BuzzFeed's failure to verify the assertions about Mr. Unsworth break any causal chain between Mr. Musk and the BuzzFeed article."  Bolger Reply Decl. Ex. A, 20 n.10.  It is unclear how "BuzzFeed's failure" has any bearing on the determinative issue, but the fact that Musk made this point without any testimony from Mac merely confirms that he does not need it.

4

1  determining payment or bonuses based on article popularity; (10) BuzzFeed's

2  assessment of the likely popularity of articles involving the Thai cave rescue; and

3  (11) BuzzFeed's assessment of the likely popularity of article involving Elon

4  Musk, Tesla, or SpaceX.

5  Musk Br. 10.  As Mac's counsel pointed out when Musk first proposed the 30(b)(6) deposition, the

6  request "calls for privileged matters related to BuzzFeed's newsgathering materials and is, indeed,

7  far broader than the request to Mr. Mac."  Bolger Decl. Ex. U.  Far from narrowing the area of

8  inquiry, the proposed 30(b)(6) subpoena seeks virtually unfettered discovery into BuzzFeed's

9  editorial practices, including practices related to *other* articles, written by journalists *other* than Mac

10  at *other* times.  The testimony sought has nothing to do with the dispute between Unsworth and

11  Musk, imposes an undue burden and is thus not discoverable.  *See* POINT I.C., *infra*.

**B.  The California Shield Law Requires That the Subpoenas Be Quashed**

12  The Subpoenas must also be quashed because the requested information is privileged

13  pursuant to the California Shield Law.  In his opposition, Musk makes three arguments in an effort

14  to avoid this, claiming that (a) the information requested falls outside the scope of protection, (b)

15  Mac waived any protection, and (c) Mac's motion is not ripe – but these arguments all fail.

1.  The Shield Law Plainly Covers the Testimony Sought from Mac

18  Musk first argues that "testimony on generally applicable standards and policies and Mr.

19  Mac's general practices" is not subject to the California Shield Law.  Musk Br. 14.  But this

20  argument is incorrect and must be rejected.  The California Shield Law extends to "any

21  unpublished information obtained or prepared in gathering, receiving or processing of information

22  for communication to the public."  Cal. Evid. Code § 1070.  And, as the cases Mac cited in his

23  opening brief demonstrate, California courts have repeatedly held that "the word 'any' means

24  without limit and no matter what kind."  *Delaney v. Super Ct.*, 50 Cal. 3d 785, 798 (1990).

25  Moreover, the caselaw is clear that information about Mac's "process for reporting and publishing

26  articles" falls squarely within the ambit of the California Shield Law.  *See, e.g.*, *People v. Vasco*,

27  131 Cal. App. 4th 137, 150 (2005) (noting that information about a journalist's "interviewing

28  procedure," including "questions on how he obtained defendant's permission to interview her [and]

5

whether he took notes or tape-recorded the interview," were subject to California Shield Law); *In re Eiseinger*, 2011 WL 1458230 (S.D.N.Y. Apr. 12, 2011) (holding that New York shield law protects journalist against answering questions about "the Wall Street Journal's investigative and editorial process, including the interaction of journalists within an investigation" because the purpose of the law is "to prevent intrusion into the editorial process"), *aff'd sub nom., Baker v. Goldman Sachs & Co.*, 669 F.3d 105 (2d Cir. 2012).

In contrast, Musk has not identified a single case holding that information relating to a journalist's "process for reporting and publishing articles" (Musk Br. 13) falls outside the broad scope of that broad protection.  Nor does Musk even attempt to rebut the cases holding that "editorial materials," including "documents relating to the researching, writing or editing of [an] article," fall "squarely within the ambit" of the California Shield Law.  *Playboy Enters., Inc. v. Super. Ct.*, 154 Cal. App. 3d 14, 17-24 (1984).  And despite his efforts to distinguish the many cases applying the California Shield Law to a broad range of unpublished information (Musk Br. 15-16), Musk ultimately does not dispute that unpublished information relating to Mac's sourcing, research, writing, editing or publication of particular news articles about Musk – or anybody else – is absolutely protected.

Instead, Musk claims he is not asking for information about specific articles and that all he wants is "unprivileged" information about "Mr. Mac's general practices."  Musk Br. 14.  But this ruse is too transparent to be effective – any questions Musk asks Mac about his "general practices" as a journalist will require Mac to disclose unpublished information about his newsgathering for specific articles.  For instance, Musk intends to ask Mac questions about his "process for developing sources on his beat."  *Id.* at 18.  But common sense dictates that it would be impossible for Mac to provide meaningful answers to these questions – even in generic terms – without drawing upon and disclosing unpublished information about his specific uses of sources in the past.  Similarly, there is no way for Mac to answer questions about "BuzzFeed News' reason for modifying its standards to specify that a reporter must agree to go off-the-record" (*id.* at 13) without discussing whether or not his newsgathering for the September 4 Article affected BuzzFeed's policy.  Even Musk admits that this line of questioning will lead to questions "about

Mr. Mac's compliance as a general matter with those guidelines" (*id.* at 19), which clearly cannot be answered without revealing unpublished information about specific instances in which Mac's reporting either did or did not comply.[6]  Put simply, Musk cannot dodge the California Shield Law by framing his questions in abstract terms.

And, indeed, this Court recently rejected a similar attempted feint by a party to a defamation action.  *Hurry v. Fin. Indus. Regulatory Auth.*, 2017 U.S. Dist. LEXIS 108005, at *5 (N.D. Cal. Apr. 7, 2017).  In that case, the plaintiff alleged that he had been defamed by statements that were attributed to an anonymous source in a series of articles and needed to prove that the defendant "was the [anonymous] source of the information."  *Id.* at *3.  The plaintiffs served a subpoena on the journalist who wrote the articles seeking documents and ordering him to appear for a deposition.  *Id.* at *2.  Although the plaintiffs conceded that "information about … sources is not a proper subject of a subpoena," they nonetheless argued they were entitled to ask the journalist a series of generic questions about his reporting, including: "[w]hat steps did [he] take to fact-check his articles," "[w]hat are his publication's policies for fact-checking stories, and did he follow the policies," and "[w]hat are his publication's policies for verifying sources?"  *Id.* at *2-3.

The journalist "moved to quash on the ground that his communications are protected by California's reporter's shield law" (*id* at *2) and – as Musk acknowledges in his own brief – "the court quashed the subpoena because the only potentially relevant information" that was sought "fell squarely within the protection of the Shield Law."  Musk Br. 19.  As the court explained:

> Information is relevant if it establishes that [the defendant] was the source of the
> information in [the] articles.  But as the plaintiffs concede, that information is
> protected, and they cannot seek it.  Other topics – fact checking, writing every
> word, policies about fact-checking and verifying sources, and following policies –
> do not bear on his claims …. Or rather, if they do, it is because they necessarily
> call for [the journalist] to reveal information about his use of confidential sources

---

[6] Musk's 30(b)(6) topics are similarly flawed.  No one can to testify about BuzzFeed's "pre-publication review process" or "the scope … of BuzzFeed's coverage of Elon Musk, Tesla, or SpaceX" without revealing unpublished information about these articles.  Musk Br. 10.

1   to research and write his articles.  That is the only information material to the…

2   case and it is protected ….”

3   *Hurry*, 2017 U.S. Dist. LEXIS 108005, at *3-4.  Musk misleadingly asserts that “the *Hurry* court

4   permitted the plaintiffs ‘to propound written discovery that is not geared toward privileged

5   information.’”  Musk Br. 19 (citing *Hurry*, 2017 U.S. Dist. LEXIS 108005, at *5).  But he neglects

6   to mention that when the plaintiffs accepted the court’s invitation and served additional requests for

7   discovery on the subject of the journalist’s “general editorial practices,” the court granted a second

8   motion to quash because the “questions are aimed only at privileged information or are irrelevant,

9   and the information is protected.”  *Hurry v. Fin. Indus. Regulatory Auth., Inc.*, 2017 U.S. Dist.

10  LEXIS 108003, at *2 (N.D. Cal. May 2, 2017).

11         Here, as in *Hurry*, the Musk Deposition Subpoena seeks material protected by the Shield

12  Law.  Like the plaintiffs in *Hurry*, Musk has conceded that the information he actually wants – *i.e.*,

13  unpublished details about “why BuzzFeed had decided to publish Musk’s Emails” (Bolger Decl. ¶

14  23) – is subject to the California Shield Law.  Like the plaintiffs in *Hurry*, Musk has recast his

15  Subpoena so as to “explore … general topics” about Mac’s journalistic practices.  Musk Br. 14.

16  And like the plaintiffs in *Hurry*, Musk’s efforts to sidestep the privilege by asking questions about

17  “journalistic practices” must fail because such questions are aimed at protected information or are

18  irrelevant (or both).  Indeed, this is even a stronger case for quashal than *Hurry* because even the

19  indisputably privileged information Musk seeks about why BuzzFeed decided to publish Musk’s

20  Emails is not relevant to the Defamation Action (*see* Mac Br. 18-20), unlike the source information

21  at issue in *Hurry*, which at least had some bearing on the underlying defamation claims.

22         In sum, no matter what spin Musk seeks to put on it, all of Musk’s proposed questions

23  require Mac to disclose unpublished information about his newsgathering for specific articles.  But

24  the California Shield Law vests Mac with an “absolute privilege” against being forced to reveal any

25  of this irrelevant and “unpublished information obtained in the newsgathering process.”  *Miller v.*

26

27

28

8

1   *Super. Ct.*, 21 Cal. 4th 883, 890 (1999); *N.Y. Times Co. v. Super. Ct.*, 51 Cal. 3d 453, 461 (1990).

2   The Musk Deposition Subpoena must, therefore, be quashed.[7]

3                   2.    <u>Mac Never Waived the Protections of the California Shield Law</u>

4          Next, Musk argues that Mac "cannot now claim the protections of the Shield Law" because

5   he waived the privilege by discussing his interactions with Musk in various interviews.  Musk Br.

6   18.  This argument also suffers from multiple fatal deficiencies.

7          *First*, and most fundamentally, Mac did not waive his rights under the California Shield

8   Law simply by making limited public statements about the September 4 Article.  Under California

9   law, "source materials and facts in memory that were obtained on a[n] … 'off the record' basis,"

10  are subject to absolute protection "so long as such matter has not been already disseminated by the

11  person from whom disclosure is sought, *even if related or derivative information has been*

12  *disseminated by such publication*."  *Playboy*, 154 Cal. App. 3d at 22.  *See also Shaklee Corp. v.*

13  *Gunnell*, 110 F.R.D. 190, 193 (N.D. Cal. 1986) (journalist "cannot be compelled to turn over [an

14  unpublished] memorandum even though it was quoted verbatim" in a published article); *Fost v.*

15  *Super. Ct.*, 80 Cal. App. 4th 724, 735 n.5 (2000) ("[W]e reject the Attorney General's argument

16  that petitioner's testimony on direct examination regarding published information constituted a

17  waiver of the protection of the shield law with respect to related information that was

18  unpublished.").  And, in fact, Musk cites no cases in which the protections of the California Shield

19  Law were found to be waived – of the eight waiver cases he cites, only one is from a California

20  court and even that case applies the federal privilege, not the California Shield Law.  *See* Musk Br.

21  16-18.  Indeed, Musk fails to identify a single case that demonstrates that a limited disclosure of

22  information is enough to waive the protections of the California Shield Law entirely.

23  

---

24  [7] Musk fails to rebut Mac's argument that the qualified First Amendment privilege bars
    enforcement of the Deposition Subpoenas.  Musk Br. 14 n.5.  *First*, Musk cannot (and does not)
25  deny that the fact that Mac is a non-party journalist weighs heavily in favor of granting his motion
    to quash.  *Id.*  *Second*, Musk makes a conclusory assertion that the information sought from Mac
26  "is central to Mr. Musk's defense," but this assertion is belied by the fact that Musk moved for
    summary judgment without deposing Mac and by the fact that Mac's testimony is clearly not
27  relevant to the issue of reasonable foreseeability.  *Id.*  *Last*, Mac claims that BuzzFeed is the only
    source of information about its "implementation of its policies and practices."  *Id.*  But it does not
28  matter whether BuzzFeed is the only source of this information because it is clearly not relevant.

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH
Case No. 3:19-mc-80224-JSC

On the contrary, the decision in *Playboy*, cited by Musk, makes clear why there can be no waiver here.  In *Playboy*, libel defendants subpoenaed a non-party journalist for all documents related to "the editing" of a published interview with the plaintiff, comedian Cheech Marin, including any document or recording that "constutitute[d] or memorialize[d]" the full interview.  *Playboy*, 154 Cal. App. 3d at 19.  The defendants argued that the protections of the California Shield Law were waived because the unpublished materials were transcribed verbatim or near-verbatim in the published article reporting the interview.  *Id*. at 23.  The court rejected this argument because the California Shield Law protects any material that remains unpublished, even if that very material was used as the basis for a published article.  *Id*. at 23-24.  In other words, the protections of the California Shield Law do not evaporate whenever a journalist discloses information, but remain in full force to protect the journalist from being forced to testify about any related material or information that remains unpublished.

Here, the fact that Mac has made limited public statements about why BuzzFeed published the Emails does not deprive him of the right to assert the protections of the California Shield Law.  A cursory glance at the limited statements in question confirms that this outcome is correct.  For instance, Mac is quoted in the *Atlantic* article as stating in general terms that he thinks people "understand how important this story is and why we published the story, and that we did everything in the right."  Musk Br. 8.  But any of the lines of questioning proposed by Musk would require Mac to go far beyond this non-specific statement and reveal unpublished information.  Simply put, the fact that Mac has made certain generic statements about why BuzzFeed published the Emails does not waive Mac's right to assert the California Shield Law's broad protection against being forced to respond to virtually unlimited questions proving his specific editorial practices and BuzzFeed's editorial practices, past and present.

*Second*, even if Mac waived his privilege as to the September 4 article – and he did not do so – he did not waive the privilege with respect to any of Musk's newly expanded list of deposition topics because he has not made public statements on any of these subjects.  For example, Musk seeks to ask Mac about his "understanding of the BuzzFeed policies on sourcing and pre-publication review."  Musk Br. 13.  But there is no statement from Mac addressing this subject in

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH
Case No. 3:19-mc-80224-JSC

the *Medium* or *Atlantic* articles, or any other published statements that even come close to discussing the "general topics" Musk seeks to "explore." *Id*. at 14.  Because Mac has not publicly commented on these subjects, even under Plaintiff's expansive view of waiver, he cannot have waived the absolute protections of the California Shield Law.

*Last*, even assuming *arguendo* that Mac waived some or all of his protections under the California Shield Law, the Musk Deposition Subpoena should still be quashed because the requested testimony is not relevant.  Indeed, one of the cases cited by Musk confirms that the subpoena to Mac should be quashed even if the privilege was waived, "[g]iven the obvious First Amendment concerns at play in compelling a non-journalist to testify, combined with the limited value of the deposition plaintiff seeks." *Baez v. JetBlue Airways*, 2012 U.S. Dist. LEXIS 161246, at *5 (E.D.N.Y. Nov. 9, 2012).  Here, as discussed above and in the Opening Memo, the information Musk seeks from Mac about his newsgathering techniques is not relevant to the underlying Defamation Action.  Even if there was a waiver, therefore, the subpoena should be quashed.

3.   This Court Should Not Delay Its Decision Quashing the Subpoenas

Musk's remaining argument that Mac's motion "has not even ripened" should be given short shrift because it is not consistent with the procedures governing this Court.  Musk Decl. 12. Musk argues that this Court must deny Mac's motion to quash until Mac has been held in contempt because "the shield law provides only an immunity from contempt, not a privilege." *Id*. at 11 (quoting *N.Y. Times Co.*, 51 Cal. 3d at 458).  But while this rule may be binding in California State courts, it is not applicable here.  In this Court, Rule 45 requires quashal of any subpoena that "requires disclosure of privileged or *other protected matter*."  Fed. R. Civ. P. 45 (emphasis added). As a result, and as set forth in the Mac's opening memorandum, federal courts have granted Rule 45 motions to quash subpoenas on the grounds that they would violate the California Shield Law. *See* Mac Br. 17 n.11 (citing cases).  In one of those federal cases, the court quashed a subpoena served on a non-party journalist "since it cannot be enforced by this Court if [the journalist] fails to appear." *Ward v. News Grp. Newspapers*, 1990 U.S. Dist. LEXIS 16113, at *3 (C.D. Cal. Aug. 27, 1990).  The court reasoned that the subpoena should be quashed under Rule 45 because the

11

journalist "has a constitutional right not to reveal this 'unpublished information' or to be forced to testify about it and he cannot be held in contempt for failing to do so." *Id*. Rather than grapple with the cases cited by Mac, however, Musk ignores them, citing only cases applying California procedure. Simply put, Musk has the law wrong and this Court should grant Mac's motion to quash the Subpoenas immediately in order to avoid an utterly futile waste of time and judicial resources, which would result if Mac were forced to go into contempt and file a duplicative motion making the same arguments to quash the Deposition Subpoenas.

**C.   Musk Has Failed To Overcome Mac's Showing That the Deposition Subpoenas Impose an Undue Burden**

Finally, Musk's Opposition fails to meaningfully rebut Mac's argument that the Deposition Subpoenas are unduly burdensome. Musk concedes (as he must) that an undue burden exists whenever "subpoenas … failed to identify any relevant information" (Musk Br. 21) and clutters his papers with conclusory assertions that "the information [he] seeks is undoubtedly relevant to issues in this case." *Id.* at 13. But nowhere does Musk actually explain why that is. Nor could he. As discussed in Mac's opening memorandum and above, Musk purports to need Mac's testimony for his "reasonable foreseeability" defense, but this argument rests entirely on *Musk's* state of mind when he sent the Emails and has nothing to do with the opinions of Mac or BuzzFeed. Musk has already testified at his deposition that he believes that it was not reasonably foreseeable that BuzzFeed would publish his email because his "standard practice … is if you say something is off the record, it is off the record." Bolger Reply Decl. Ex. C, Tr. 171:10-14. Musk has also testified that BuzzFeed's understanding of how off-the-record works (*i.e.*, that both sides have to agree) "is not consistent with my interaction with reporters," including Musk's experiences with "with thousands of media over a quarter century." *Id.* at Tr. 171:15-17, 172:15-16. Musk has also filed a detailed declaration in support of his motion for summary judgment that explains over the course of many pages why Musk "understood that by designating [his] emails to Mr. Mac as off the record and on background their contents would not be shared." *Id.* Ex. B, ¶¶ 40-57. The evidence that Musk has already provided about his own beliefs and understanding at the time he sent Mac the Emails is (rightly) the sole basis for his summary judgment argument that "republication was not

12

1    reasonably foreseeable." *Id.* Ex. A, 20-21.  Indeed, Musk does not – and cannot – explain how

2    testimony about Mac's "general practices" as a journalist (Musk Br. 14) could possibly be relevant

3    to the dispositive legal issue, which is "what Mr. Musk reasonably expected BuzzFeed to do."

4    Bolger Reply Decl. Ex. A, 20.

5           Finally, Musk's argument that his "deposition subpoena is not an attempt to annoy or harass

6    Mr. Mac" is equally specious and should be rejected.  Musk Br. 19.  Musk does not dispute that he

7    harbors personal animosity towards Mac – whom he addressed as "fucking asshole" in his

8    introductory Email – and while he attempts to downplay his animosity as being "occasionally rude

9    to journalists" (Musk Br. 20), he cannot deny that BuzzFeed published a whole article recounting

10   multiple instances in which Musk has attempted to "crush[]" his critics.  Mac Decl. Ex. A.  Musk

11   made it clear at his deposition that he blames "the BuzzFeed guy" for "br[eaking] journalistic

12   ethics" and, in  a clear attempt to deflect responsibility, seeks to blame Mac for his own decision to

13   publish the Emails.  Bolger Reply Decl. Ex. C, Tr. 64:3-11. And, indeed, the broad and intrusive

14   proposed 30(b)(6) topics, which on their face seek discovery into every article BuzzFeed has ever

15   written about Musk and his companies, Tesla and SpaceX, emphasizes that Musk is gunning for

16   more information than he can ever hope to use in this litigation. The Subpoena is, purely and

17   simply, an effort to bully a reporter and a publication that have been critical of him.[8]

18          In sum, Musk has failed to rebut Mac's showing that the Deposition Subpoenas impose an

19   undue burden – and must be quashed – under Rule 45 because they do not call for relevant

20   testimony and are primarily designed to harass.

21   **II.     THIS COURT SHOULD QUASH UNSWORTH'S DEPOSITION SUBPOENA**

22          This Court should also quash the Deposition Subpoena from Unsworth because it, too, is

23   unduly burdensome and would require disclosure of irrelevant, privileged information.  Courts have

24   expressed "a preference for parties to obtain discovery from one another before burdening non-

25   _____

26   [8] The Court should also reject Musk's request for a "protective order narrowing the scope of the
     deposition" or appointing a "discovery referee to ensure Mr. Mac does not experience any
27   harassment or questioning on topics covered by the Shield Law."  Musk Br. 20 & n.6.  Simply put,
     these measures would be futile.  The protective order cannot be narrowed because *none* of the
28   topics proposed by Musk are relevant to any of the issues in the Defamation Action.

parties" (*Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012)) and "[t]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, 2016 U.S. Dist. LEXIS 76772, at *15 (N.D. Cal. June 13, 2016) (citation and internal quotation marks omitted).  In his opposition, Unsworth agrees that "the parties already have all the information they need" from Mac "for discovery purposes," but he opposes Mac's motion to quash on the narrow ground that he needs Mac's testimony "to establish at trial by admissible evidence the publication of a libel by Musk to … third parties, namely Mac and BuzzFeed."  Unsworth Br. 1, 4.  More specifically, Unsworth claims that he wants to depose Mac on "a limited series of foundational facts" set forth in the declaration Mac submitted in support of this motion so that they are admissible at trial.  But Unsworth does not need Mac's testimony for this purpose because he already has Musk's.  For instance, Musk can authenticate the two Emails that he sent to Mac, which BuzzFeed republished in the September 4 Article, and in fact has apparently already done so.  *See* Bolger Reply Decl. B, ¶ 40.  Musk can also confirm that he has "never spoken with Musk (either in person or telephonically)" and can verify any other factual details relating to his communications with Mac.  In short, the limited deposition Unsworth has proposed is clearly unnecessary given Unsworth's failure to identify any evidence that is not equally available from other sources.

More fundamentally, the extremely limited value of the deposition to Unsworth is far outweighed by the burden of exposing Mac to cross-examination by Musk.  Seeking to deflect Mac's valid reservations, Unsworth dismisses "[t]he privilege concerns raised by Mac and BuzzFeed [because] they do not apply to Unsworth's direct examination of Mac – they only arise because of BuzzFeed's concern as to how Musk would conduct his cross-examination of Mac at the deposition."  Unsworth Br. 3.  But the fact that Mac would suffer harassment on cross-examination is precisely why even Unsworth's limited Subpoena imposes an undue burden.  As the Second Circuit has recognized, "cross-examination within the scope of the direct" will follow Unsworth's limited deposition and "[i]t is beyond cavil that such cross-examination would have to dwell on the inferences that the question[s are] intended to support and thus would enter the area of privilege." *Baker*, 669 F.3d at 110-11.  Accordingly, courts have quashed subpoenas seeking to compel

journalists to give limited testimony about published articles when it would expose them to cross-examination that requires the disclosure of information subject to the reporter's privilege. *See id.* at 111-12 (quashing subpoena calling for testimony about the accuracy of a published article because cross-examination would impinge on New York's shield law).[9]  Following the same principles, California courts have also recognized that "a trial court may bar the receipt in evidence of … direct testimony" on a published article if the California Shield Law "is invoked to resist … cross-examination." *Fost*, 80 Cal. App. 4th at 736-37.  For the same reasons, this Court should quash Unsworth's Deposition Subpoena so that it does not serve as a back door for Musk to violate Mac's rights under the California Shield Law.[10]

## CONCLUSION

For the reasons set forth above, the Deposition Subpoenas should be quashed pursuant to Rule 45 because they seek information that is absolutely protected under the California Shield Law and also subject to the qualified First Amendment reporters' privilege and because they impose an undue burden on non-party journalist Mac.

Dated:  October 4, 2019                     DAVIS WRIGHT TREMAINE LLP

                                            By:    */s/ Thomas R. Burke*
                                                    Thomas R. Burke

                                            Attorneys for Non-Party Journalist Ryan Mac

---

[9] "If the proposed question was allowed to be asked and answered on the ground that it sought information outside the [area protected by the reporter's privilege], the cross-examiner could then easily overcome the privilege by showing a critical need to establish [a] defense to the inferences to be drawn from the answer.  The result would turn [the privilege] on its head by allowing an evasion of the privilege through a question deliberately framed to be (supposedly) outside the scope of the privilege to have the effect of compelling testimony on cross-examination within the privilege.  We decline to follow a route leading to this result." *Id.* at 111-12.

[10] Unsworth's opposition brief has outlined the only workable way to obtain evidence from Mac for use at trial, which is to "stipulate to the admissibility of the Mac Declaration." Unsworth Br. 1.  If Musk seriously believes that Mac's testimony is relevant, he should accept this offer.  If, as expected, Musk refuses to stipulate on the grounds that he will not be able to cross-examine Mac, this will merely confirm that Musk's real intent is to force Mac to disclose unpublished information relating to his journalistic practices and BuzzFeed's decision to publish the Emails, which he is absolutely precluded from doing by the California Shield Law.

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH
Case No. 3:19-mc-80224-JSC