UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ELON MUSK,<br><br>　　　　Defendant. | Case No. 19-mc-80224-JSC<br><br>**ORDER RE: MOTION TO QUASH SUBPOENAS**<br><br>Re: Dkt. No. 1 |

This dispute arises out of subpoenas that Plaintiff Vernon Unsworth (the "Unsworth Subpoena") and Defendant Elon Musk (the "Musk Subpoena") issued to non-party journalist Ryan Mac in a pending defamation action in the United States District Court for the Central District of California. *See Unsworth v. Musk*, No. 2:18-cv-08048-SVW-JC (C.D. Cal.). The underlying lawsuit alleges that Mr. Musk made "false and defamatory accusations" about Mr. Unsworth in public statements on Twitter as well as emails Mr. Musk sent to Mr. Mac that were subsequently published by Mr. Mac's employer, BuzzFeed News ("BuzzFeed"). (Dkt. No. 2-1, Ex. W at 99 ¶¶ 88-96.)[1] Before the Court is Mr. Mac's motion to quash the subpoenas. (Dkt. No. 1.) Having considered the parties' briefing and having had the benefit of oral argument on October 17, 2019, the Court GRANTS Mr. Mac's motion to quash the Musk Subpoena as unduly burdensome because the testimony it seeks is not relevant. The Court DENIES Mr. Mac's motion to quash the Unsworth Subpoena.

**BACKGROUND**

The underlying lawsuit stems from several comments Mr. Musk made about Mr. Unsworth related to the well-publicized July 2018 rescue of twelve boys and their soccer coach from the Tham Luang Nang Non cave system in Thailand. (Dkt. No. 2-1, Ex. W at 87, ¶¶ 1-4.) The following facts are not in dispute. Mr. Musk made the allegedly defamatory comments after Mr.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Unsworth gave an interview to CNN on July 13, 2018, during which he characterized Mr. Musk's attempt to aid in the rescue efforts by providing a mini-submarine as a "'PR stunt'" and stated that Mr. Musk "'can stick his submarine where it hurts.'" (*See id.* at 95-96, ¶¶ 70-72.) In response to Mr. Unsworth's interview, Mr. Musk posted several public statements on Twitter ("tweets") on July 15, 2018, including one in which he referred to Mr. Unsworth as "pedo guy." (*Id.* at 97, ¶ 76; *see also* Dkt. No. 20-6 at 2.) Mr. Musk deleted the July 15 tweets three days later, and in a July 18 tweet apologized to Mr. Unsworth. (Dkt. No. 2-1, Ex. W at 98, ¶ 80; *see also* Dkt. No. 20-8 at 2.) On or about August 28 or 29, 2018, Mr. Musk responded on Twitter to a tweet regarding the "pedo" comment by stating, in part, "You don't think it's strange he hasn't sued me?" (Dkt. No. 2-1, Ex. W at 99, ¶ 83; *see also* Dkt. No. 20-15 at 2.) Mr. Unsworth's counsel responded to Mr. Musk's tweet shortly thereafter, tweeting that Mr. Musk "should check his mail before tweeting" and attaching a copy of an August 6, 2018 demand letter from Mr. Unsworth's counsel to Mr. Musk in which counsel notes that he is "in the process of preparing a civil complaint for libel against [Mr. Musk]." (Dkt. No. 2-1, Ex. W at 99, ¶ 87; *see also* 20-16 at 2.)

Mr. Mac is a journalist for BuzzFeed based in its San Francisco office. (Dkt. No. 3 at ¶ 1.) On August 29, 2018, BuzzFeed published an article written by Mr. Mac entitled "The Cave Rescuer Elon Musk Called A 'Pedo' Has Lawyered Up And Is Preparing A Libel Claim" ("August Article"). (*Id.* at ¶ 3; *see also* Dkt. No. 3, Ex. B at 27.) Prior to publishing the August Article, Mr. Mac emailed Mr. Musk the morning of August 29, 2018, seeking to "talk about the letter." (Dkt. No. 20-17 at 5-6.) Mr. Musk responded to Mr. Mac's email within the hour, questioning whether he had "even bothered to research basic facts." (*Id.* at 5.) Mr. Mac emailed Mr. Musk the day after BuzzFeed published the August Article "to make sure [Mr. Mac] did [his] due diligence to research basic facts and follow up." (*Id.* at 4.) Mr. Musk responded shortly thereafter with an email stating, in part:

> Off the record
>
> I suggest that you call people you know in Thailand, find out what's actually going on and stop defending child rapists, you fucking asshole."

(*Id.* at 3.) Mr. Musk then sent Mr. Mac another email on August 30, 2018 with the heading "On

background." (Dkt. No. 20-18 at 2.) The email primarily disputes Mr. Unsworth's characterization of Mr. Musk's role in the rescue efforts. (*See id.*)

On September 4, 2018, Mr. Mac responded by email to Mr. Musk's August 30 "Off the record" email. (Dkt. No. 20-17 at 3.) Mr. Mac's email states, in pertinent part, that he "didn't agree for the conversation to be off the record." (*Id.*) Mr. Mac's email also asked Mr. Musk if he had found anything to corroborate his "accusations" about Mr. Unsworth. (*Id.*) Roughly two hours later, Mr. Musk responded by email, stating:

> Off the record
>
> We haven't had a conversation at all. I sent you an off the record email, which very clearly and unambiguously said "off the record." If you want to publish off the record comments and destroy your journalistic credibility, that's up to you.
>
> As for answering more questions, I would be happy to do so, but not with someone who just told me that they will not honor accepted rules of journalism.

(*Id.* at 2-3.) Mr. Mac responded by email that day, stating that he would "rather chat on the record[,]" but that he was "happy to go off record with you moving forward so you can answer specific questions regarding the allegations you've made." (*Id.* at 2.) Mr. Musk responded by email within the hour, stating:

> Off the record
>
> I suggest you ask Unsworth to describe his whole [ ] 30 year history of visiting Thailand. What was he doing in Pattaya Beach for the better part of a decade when there are no caves of note in the area?

(*Id.*) That evening, BuzzFeed published an article written by Mr. Mac and two other BuzzFeed journalists entitled "In a New Email, Elon Musk Accused a Cave Rescuer of Being a 'Child Rapist' and Said He 'Hopes' There's a Lawsuit" ("September Article"). (Dkt. No. 3 at ¶ 4; *see also* Dkt. No. 3, Ex. C at 34.) The September Article includes, in its entirety, Mr. Musk's August 30, 2018 "Off the record" email in which he refers to Mr. Unsworth as a "child rapist[ ]." (*See* Dkt. No. 3, Ex. C at 37, 46-47.) The Article also includes Mr. Musk's August 30, 2018 "On background" email in its entirety. (*See id.* at 47-48.) As for Mr. Musk's use of "Off the record," the September Article states:

3

> Though Musk prefaced one email with "off the record," BuzzFeed News did not agree to that condition of the correspondence. (Per common journalistic practice, a conversation is off the record only if both parties agree to the terms.)

(*Id.* at 35-36.) Mr. Mac emailed Mr. Musk again on September 4, 2018, after BuzzFeed published the Article. (*See* Dkt. No. 20-17 at 2; *see also* Dkt. No. 3, Ex. C at 34.) The email states, in pertinent part:

> I'm sure you've seen the story at this point. Still happy to talk to you on whatever terms you want as long as we set them beforehand. Let me know if you want to do phone call.

(Dkt. No. 20-17 at 2.) Mr. Musk responded by email shortly thereafter, stating: "Get lost, you creep." (*Id.*)

## II.  Procedural History

Mr. Unsworth filed the underlying lawsuit on September 17, 2018. (Dkt. No. 2-1, Ex. W.) Mr. Musk issued a document subpoena to BuzzFeed in June 2019, seeking production of, among other things, copies of BuzzFeed's August and September Articles, and "internal policies, memoranda, or any other documents concerning 'off the record' or 'on background' conversations or communications with third parties." (Dkt. No. 2, Ex. O at 145.) BuzzFeed objected to the subpoena, (Dkt. No. 2-1, Ex. P at 2), but agreed to produce certain documents, including the August and September Articles, (*id.* at 5). BuzzFeed also provided a link to the online copy of its News Standards and Ethics Guide. (*Id.* at 6-7.) In July 2019, Mr. Unsworth issued a document subpoena to BuzzFeed, seeking production of, among other things, the August and September Articles and BuzzFeed's website traffic related to same. (*See* Dkt. No. 2, Ex. L at 110-11.) BuzzFeed objected to the subpoena, (Dkt. No. 2, Ex. M at 113), but agreed to produce nonprivileged documents responsive to some requests for production, (*see id.* at 116-120).

Mr. Musk issued a second document subpoena to BuzzFeed in August 2019, (Dkt. No. 2-1, Ex. Q at 15), seeking production of, among other things, copies of the News Standards and Ethics Guides in effect during publication of both the August and September 2018 Articles and documents related to any revisions of the News Standards and Ethics Guides, and "communications concerning the decision to publish the contents of the August 30, 2018 emails" from Mr. Musk to Mr. Mac, (*id.* at 23-24). BuzzFeed objected to the subpoena, (Dkt. No. 2-1, Ex.

4

R at 27), and produced only copies of the version of the News Standards and Ethics Guide that were in effect at the relevant time and the documents it had also provided to Mr. Unsworth, (*id.* at 30-37).

On August 26, 2019, Mr. Musk issued a deposition subpoena to Mr. Mac noticing the deposition for September 11, 2019. (Dkt. No. 2-1, Ex. S at 64.) Mr. Unsworth then issued a deposition subpoena to Mr. Mac on September 6, 2019, also noticing the deposition for September 11, 2019. (*See* Dkt. No. 2-1, Ex. T at 69.) Counsel for BuzzFeed and Mr. Mac corresponded with Mr. Musk's counsel via email regarding the Musk Subpoena, and on September 4, 2019 Mr. Mac indicated that he would not appear and instead intended to file a motion to quash. (Dkt. No. 2-1, Ex. U at 75.) On September 9, 2019, Mr. Musk proposed "go[ing] forward with a Rule 30(b)(6) deposition instead" to avoid Mr. Mac's motion to quash and proposed 11 topics that such a deposition would cover. (*Id.* at 73.) Counsel for BuzzFeed and Mr. Mac refused the offer, stating that the proposed "request calls for privileged matters related to BuzzFeed's newsgathering materials and is, indeed, far broader than the request to Mr. Mac." (*Id.*)

Mr. Mac filed the instant motion to quash on September 13, 2019. (Dkt. No. 1.) Mr. Unsworth and Mr. Musk have filed responses, (Dkt. Nos. 17 & 19), and Mr. Mac has filed a reply, (Dkt. No. 28). The Court heard oral argument on October 17, 2019.

## REQUESTS FOR JUDICIAL NOTICE

Mr. Mac requests that the Court take judicial notice of several exhibits submitted in conjunction with the declaration of his counsel, Katherine M. Bolger, pursuant to Federal Rule of Evidence 201. (*See* Dkt. Nos. 2 & 4.) Rule 201(b) provides that a judicially noticed adjudicative fact must be one "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). Here, Mr. Mac seeks judicial notice of the following news articles and public website posts: (1) Twitter exchange posted on Elon Musk's Twitter account between July 3 and July 4, 2018; (2) "July 4, 2018 Business Insider article written by Tara Francis Chan entitled 'Elon Musk offers to help rescue the Thai soccer team stuck in a cave'"; (3) July 6, 2018 BBC.com article written by Dearbail Jordan

entitled 'Elon Musk offers to help Thai cave rescue'"; (4) July 6, 2018 BuzzFeed article written by Nicole Nguyen entitled 'Elon Musk Is Sending Engineers To Help With The Thai Soccer Team Stuck In A Cave'"; (5) July 6, 2018 CNN article written by James Masters entitled 'Elon Musk sends engineers to help Thai cave rescue mission'"; (6) "July 8, 2018 CNN article written by Jackie Wattles entitled 'Elon Musk shares video of "kid-size" submarine for Thai cave rescue'"; (7) "July 8, 2018 Business Insider article written by Matthew Michaels entitled 'Elon Musk posted videos of the "kid-size submarine" he's sending to help save the boys trapped in a cave in Thailand'"; (8) "September 6, 2018[ ] *Atlantic* article written by Marina Koren entitled 'Elon Musk and the Meaning of "Off the Record"'"; and (9) "August 24, 2019 tweet from [Mr. Unsworth's] counsel's public Twitter page stating that he had taken Musk's deposition and that '[t]he emperor has no clothes.'"  (Dkt. No. 4 at 3-4 (seeking judicial notice of Dkt. No. 2 – 2-1, Exs. A-G, J, V).)  Neither Mr. Unsworth nor Mr. Musk object to Mr. Mac's request for judicial notice or otherwise contest the authenticity of the above-cited exhibits.

Mr. Mac asserts that the documents above evidence facts (i.e., "the existence of news reporting" on both Mr. Musk's tweets and "BuzzFeed's decision to publish [Mr. Musk's] emails," and "the existence of a public tweet") that are not subject to reasonable dispute because the parties cannot reasonably question the existence of the articles and tweets.  (*See* Dkt. No. 4 at 3-4.)  The Court agrees that judicial notice is proper because the existence of the publicly-available articles and tweets cannot reasonably be questioned.  *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true") (internal quotation marks and citation omitted).  Thus, the Court takes judicial notice of the proffered exhibits.  For the same reason, the Court also takes judicial notice of the publicly-available tweets and news articles submitted in conjunction with the declaration of Robert M. Schwartz in support of Mr. Musk's opposition to the instant motion.  (*See* Dkt. Nos. 20-6 – 20-8; 20-15 – 20-16; 20-19; *see also* Dkt. No. 21 (Mr. Musk's request for judicial notice).)

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) allows a party to obtain discovery concerning any

6

nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Parties may seek discovery within the scope of Rule 26(b) by deposing a witness pursuant to Rule 30 or serving requests for production of documents pursuant to Rule 34. Rule 45 governs discovery of nonparties by subpoena. The scope of discovery under Rule 45 is the same as under Rule 26(b). Fed. R. Civ. P. 45 advisory committee's note (1970); Fed. R. Civ. P. 34(a). A non-party subject to a subpoena may file a motion to quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(A). A court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

*Id.* Generally, the party moving to quash under Rule 45(d)(3) bears the burden of persuasion, but "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Optimize Tech. Solutions, LLC v. Staples, Inc.*, No. 14-MC-80095, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) (internal quotation marks and citation omitted); *see also Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894, at *4 (N.D. Cal. Apr. 10, 2013) ("The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed.")

## DISCUSSION

Mr. Mac moves to quash both deposition subpoenas, asserting that they violate Federal Rule of Civil Procedure 45(d)(3)(A) by: (1) requiring 'disclosure of privileged or other protected matter'" under California's reporters' shield law, Cal. Const. art. I, § 2(b) and Cal. Evid. Code § 1070 (together, the "California Shield Law"); and (2) imposing an undue burden on Mr. Mac because the testimony sought "is irrelevant to the legal issues in this case." (Dkt. No. 1 at 8.)

The Court addresses each subpoena in turn.

**I.      Unsworth Subpoena**

Mr. Mac asserts that the Unsworth Subpoena must be quashed because it is "unduly

burdensome and would require disclosure of irrelevant, privileged information." (Dkt. No. 28 at 17.) At oral argument Mr. Unsworth clarified that his questioning of Mr. Mac will be limited to (1) establishing that there were no communications between Mr. Mac and Mr. Musk other than the emails at issue and, (2) "the fact of publication" (i.e., that BuzzFeed published the emails at issue).

As a percipient witness to some of the communications at issue in the underlying action, Mr. Mac's testimony is relevant to Mr. Unsworth's claim. While these facts appear to be undisputed by Mr. Musk, Mr. Mac is beyond the subpoena power of the Central District of California and thus Mr. Unsworth cannot compel him to testify at trial; Mr. Unsworth is entitled to preserve Mr. Mac's testimony in the event Mr. Musk takes a different position at trial. Further, Mr. Unsworth's limited deposition topics do not fall under the scope of any privilege or the California Shield Law, which provides that "newspersons 'shall not be adjudged in contempt . . . for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public.'"[2] *N.Y. Times Co. v. Super. Ct.*, 51 Cal. 3d 453, 458 (1990) (quoting Cal. Const. art. I, § 2(b) and noting that "[t]he provision's statutory counterpart, Evidence Code section 1070, contains a virtually identical provision"). The very limited testimony Mr. Unsworth seeks will not disclose unpublished information related to Mr. Mac's newsgathering.

**II.     Musk Subpoena**

As clarified in Mr. Musk's opposition to the instant motion, the Musk Subpoena "seeks information concerning the generally applicable guidelines and policies of Mr. Mac and BuzzFeed News with regard to honoring requests to treat information provided on an 'off the record' basis, standards for sourcing articles, and policies for assessing potentially defamatory content." (Dkt. No. 19 at 5.) Mr. Mac's reply in support of the instant motion asserts that the Court "need not even reach the privilege issue and could quash pursuant to Rule 45 alone because 'any burden

---

[2] Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Thus, because the underlying action is a state law tort claim for defamation, consideration of the California Shield Law's applicability to the instant motion to quash is proper. *See Star Editorial, Inc. v. United States Dist. Ct.*, 7 F.3d 856, 859 (1993) (applying California law to "determin[e] the existence or extent of the privilege" in defamation action) (citing Fed. R. Evid. 501).

8

whatsoever [is] by definition undue' when the information sought is 'not relevant.'" (Dkt. No. 28 at 6 (citing *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006)).) The Court agrees that the information sought is not relevant to Mr. Musk's defense in the underlying action.

### A. Undue Burden

"[A] court determining the propriety of subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Gonzales*, 234 F.R.D. at 680. Where the information sought is not relevant to a claim or defense "then any burden whatsoever imposed would be by definition 'undue.'" *Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995).

Mr. Musk contends that the topics on which he seeks to depose Mr. Mac are relevant to whether it was reasonably foreseeable to Mr. Musk that Mr. Mac would publish his emails not withstanding his "off-the-record" notations. The Court disagrees.

Reasonable foreseeability is predicated on the state of mind of the originator of the defamatory matter (Mr. Musk) and not the secondary publisher (Mr. Mac or BuzzFeed). *See Schneider v. United Airlines*, 208 Cal. App. 3d 71, 77 (1989) ("[A] party has a cause of action for libel each time the defamatory matter is published, even if the originator of the defamatory matter did not republish the defamatory matter, as long as republication should have been reasonably foreseeable *by the originator*.") (emphasis added); *see also Mitchell*, 37 Cal. 3d at 281 (explaining that "[t]he rationale for making the originator of a defamatory statement liable for its foreseeable republication is the strong causal link between the actions of the originator and the damage caused by the republication") (internal quotation marks and citation omitted). Indeed, the record in the underlying action shows that Mr. Musk's recognizes that *his* state of mind is dispositive to the issue of reasonable foreseeability.

Mr. Musk's pending motion for summary judgment asserts that "[i]t was not reasonably foreseeable that BuzzFeed would unilaterally publish communications that were labeled off-the-record instead of independently verifying the information before publishing it[ ]" because "BuzzFeed's own published policies require such verification" and BuzzFeed's own newsroom policies in place at the time required no 'agreement' to go off the record." (Dkt. No. 28-2 at 28

9

n.9 (citing BuzzFeed's News Standards and Ethics Guide in effect from January 5, 2018 to November 1, 2018 (*see* Dkt. No. 2, Ex. H at 52) and the revised News Standards and Ethics Guide in effect since November 2, 2018 (*see* Dkt. No. 2, Ex. I at 63) ("Interviews are always on the record until a reporter agrees to go off the record or on background.")).) Mr. Musk's motion for summary judgment notes that BuzzFeed added the "agreement" provision two months after Mr. Musk "sent the off-the-record emails." (*Id.*) Further, Mr. Musk's declaration in support of his motion for summary judgment attests that he has "had numerous off-the-record interactions with reporters[,] and those "reporters treated information as off-the-record and did not publish it whenever [Mr. Musk] identified it as such, regardless of whether or not [Mr. Musk and the reporters] reached an explicit agreement before [Mr. Musk] shared the information." (Dkt. No. 28-3 at 11, ¶ 56.) Mr. Musk attests that he thus "understood that by designating [his] emails to Mr. Mac as off-the-record and on background their contents would not be shared." (*Id.*)

Questioning Mr. Mac as to "generally applicable guidelines and policies of Mr. Mac and BuzzFeed News with regard to honoring requests to treat information provided on an 'off the record' basis, standards for sourcing articles, and policies for assessing potentially defamatory content," (*see* Dkt. No. 19 at 5), would serve no purpose in further supporting Mr. Musk's "reasonable foreseeability" defense because it is Mr. Musk's state of mind that is at issue—not Mr. Mac's understanding of BuzzFeed's general policies. The result might be different if there was a dispute between Mr. Mac and Mr. Musk, or even Buzzfeed and Mr. Musk, as to what had been communicated to Mr. Musk regarding off-the-record communications. But Mr. Musk agrees that the *only* communications he had with Mr. Mac are the emails at issue; thus, Mr. Mac's personal and uncommunicated understanding at the time he published the emails is not relevant to Mr. Musk's defense to Mr. Unsworth's claim.

Mr. Musk also asserts that "the relevant [deposition] topics are not limited to reasonable foreseeability, but also include safeguards that BuzzFeed News employs to ensure that they do not publish defamatory articles." (*Id.* at 23.) However, Mr. Musk fails to explain how Mr. Mac's testimony regarding any such "safeguards" is relevant to his defense. It is not. All that could be relevant is Mr. Musk's understanding of any such safeguards and he does not require Mr. Mac's

10

1  testimony for that evidence.  Mr. Musk further argues that he "is entitled to ask about the change
2  in the BuzzFeed News Standards and about Mr. Mac's compliance as a general matter with those
3  guidelines," as well as "BuzzFeed's and Mr. Mac's journalistic practices," because such testimony
4  will provide facts on which to base expert testimony regarding "treatment of off-the-record
5  requests."  Again, the question is Mr. Musk's reasonable belief based on the information known to
6  him.  An expert may be able to opine that Mr. Musk's belief was in accord with general practice in
7  the industry, or with how Mr. Musk's off-the-record conversations had been treated in the past,
8  but Mr. Musk has not identified how getting into Mr. Mac's unpublished thoughts or actions could
9  be a relevant basis for expert testimony.

10  It bears emphasizing that Mr. Unsworth is not seeking similar information from Mr. Mac
11  or Buzzfeed, nor are Mr. Mac or BuzzFeed voluntarily providing such information to Mr.
12  Unsworth.  In other words, Mr. Unsworth is not attempting to prove that it was reasonably
13  foreseeable to Mr. Musk that the emails would be published because of Mr. Mac's and
14  BuzzFeed's nonpublic practices and guidelines as to off-the-record statements.  While the Court
15  believes such discovery would still ultimately be irrelevant and inadmissible, it would be unfair to
16  prevent Mr. Musk from discovering that evidence if Mr. Unsworth was attempting to use it.  But
17  as his very limited discovery request of Mr. Mac shows, he is not.

18  Mr. Mac has demonstrated that the Musk Subpoena is unduly burdensome because the
19  testimony it seeks is not relevant.  Mr. Musk, as "[t]he party issuing the subpoena," fails to rebut
20  Mr. Mac's showing by "demonstrat[ing] that the information sought is relevant and material to the
21  allegations and claims at issue in the proceedings."  *See Optimize Tech.*, 2014 WL 1477651, at *2
22  (internal quotation marks and citation omitted).  Accordingly, the Court grants Mr. Mac's motion
23  to quash the Musk Subpoena.

## CONCLUSION

25  For the reasons stated above, the Court GRANTS Mr. Mac's motion to quash the Musk
26  Subpoena and DENIES the motion to quash the Unsworth Subpoena.  The deposition of Mr. Mac
27  is limited to the topics specified by Mr. Unsworth at oral argument, on direct examination and on
28  Mr. Musk's cross-examination.  In particular, the Court finds good cause to issue a protective

11

order limiting the scope of the deposition—and Mr. Musk's cross-examination—to the two topics discussed at oral argument: (1) establishing that there were no communications between Mr. Mac and Mr. Musk other than the emails at issue; and (2) that BuzzFeed published those communications.  While in some cases the Court might give the cross-examiner more latitude, Mr. Musk's request to question Mr. Mac or a Buzzfeed 30(b)(6) representative about irrelevant and harassing topics such as "[t]he scope and existence of BuzzFeed's coverage of Elon Musk, Tesla, or SpaceX," "BuzzFeed's policies for determining payment or bonuses based on article popularity," and BuzzFeed's guidelines on social media usage by reporters,"  (*see* Dkt. No. 2-1, Ex. U at 73), requires the setting of strict limitations here, especially since the record suggests Mr. Musk feels animus toward non-party Mr. Mac.  *See* Fed. R. Civ. P. 26(c)(1)(D) (providing that a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters").

This Order disposes of Docket No. 1.

**IT IS SO ORDERED.**

Dated: October 28, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge